UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MICHAEL G. BISHOP**                                    **CIVIL ACTION**

**versus**                                                      **NO. 12-2475**

**WARDEN STEVE RADER**                           **SECTION: "B" (1)**

**REPORT AND RECOMMENDATION**

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Michael G. Bishop, is a state prisoner incarcerated at the Dixon Correctional Institute, Jackson, Louisiana. He was convicted in state court of oral sexual battery, aggravated incest, molestation of a juvenile, and sexual battery. He was sentenced as follows: on count one, five years without benefit of probation, parole, or suspension of sentence; on count two, twelve years; on count three, five years; and on count four, five years without benefit of probation, parole, or suspension of sentence. It was ordered that all of his sentences be served concurrently.[1]

---

[1] State v. Bishop, No. 2007 KA 0806, 2007 WL 2685054, at *1 (La. App. 1st Cir. Sept. 14, 2007); Rec. Doc. 3, p. 74. In the instant proceeding, the state failed to submit a copy of the state court record as ordered; however, the parties have attached various documents to their pleadings. Because the authenticity of those documents has not been challenged and because they are sufficient

On September 14, 2007, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[2] The Louisiana Supreme Court then denied his related writ application on August 22, 2008.[3]

Petitioner thereafter filed an application for post-conviction relief with the state district court,[4] which he later supplemented on two occasions.[5] After a prolonged delay, an evidentiary hearing was held on July 13, 2011, and the application was finally denied by the state district court on August 1, 2011.[6] Petitioner then filed a notice of intent to seek supervisory writs of review.[7] He also subsequently filed an "Application for Writs of Mandamus" with the Louisiana First Circuit Court of Appeal, requesting that the district court be directed both to provide him with a copy of a transcript of the evidentiary hearing and to set a date for the lodging of supervisory writs.[8] The Court of Appeal denied that application, noting that it had been "advised by the Office of the Clerk of Court of Terrebonne Parish that a motion for production of documents, filed after

---

for the Court to dispose of petitioner's claims, the Court has simply proceeded without requiring the state to produce a separate copy of the record.

[2] Id.; Rec. Doc. 3, pp. 73-78.

[3] State *ex rel.* Bishop v. State, 988 So.2d 261 (La. 2008) (No. 2007-KH-2172); Rec. Doc. 3, p. 79.

[4] Rec. Doc. 3, pp. 80-113.

[5] Rec. Doc. 3, pp. 123-45.

[6] Rec. Doc. 3, pp. 152-62.

[7] Rec. Doc. 3, pp. 163-64.

[8] Rec. Doc. 3, pp. 168-71.

August 1, 2011, is not of record."[9]  Petitioner's related writ application was then likewise denied by the Louisiana Supreme Court on August 22, 2012.[10]

In the interim, petitioner learned that the attorney who had represented him at trial was subsequently disbarred based on unrelated misconduct.  Armed with that new information, petitioner filed with the state district court a motion to reopen his post-conviction proceedings,[11] as well as related motions to recuse the presiding judge, Judge David Arceneaux,[12] and for appointment of counsel.[13]  On December 10, 2012, the Office of the Public Offender was appointed to represent petitioner with respect to the motion to recuse, and the motion was set for hearing before Judge Randall Bethancourt.[14]  However, petitioner then moved to recuse Judge Bethancourt as well.[15]  Petitioner alleges that motion was granted and the matter has not yet been reset before another judge.[16]  Therefore, it appears that both the motion to recuse and the motion to reopen the post-conviction proceedings remain pending in the state district court.

In the meantime, on or about October 4, 2012, petitioner had filed the instant application for federal *habeas corpus* relief.  The state argues that the application should be

---

[9] State v. Bishop, No. 2011 KW 1721 (La. App. 1st Cir. Nov. 9, 2011); Rec. Doc. 3, p. 172.

[10] State *ex rel.* Bishop v. State, 95 So.3d 1065 (La. 2012) (2011-KH-2541); Rec. Doc. 3, p. 234.

[11] Rec. Doc. 3, pp. 197-205.

[12] Rec. Doc. 3, pp. 206-15.

[13] Rec. Doc. 3, pp. 222-23.

[14] Rec. Doc. 9-2.

[15] Rec. Doc. 11, p. 27.

[16] See Rec. Doc. 11, pp. 5 and 30.

dismissed because petitioner has not yet exhausted his remedies in the state courts. Petitioner counters that the state courts have impeded his ability to seek proper review and, in any event, exhaustion in this case would be futile.

Fortunately, a federal court can pretermit a decision on exhaustion where, as here, a petitioner's *habeas* claims have no merit and should be dismissed on that basis. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008). In the interest of judicial economy, the undersigned recommends that the Court proceed in that manner.

In this federal proceeding, petitioner claims that his trial counsel was ineffective for requesting a continuance shortly before the state's deadline for bringing him to trial. The United States Supreme Court has established a two-prong test for evaluating such claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In the state post-conviction proceedings, the state district court denied petitioner's claim, holding:

> Claims of ineffective assistance of counsel are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104

S.Ct. 2052, 80 L.ED2d 674 (1984). In order to prevail, the defendant must show both that (1) counsel's performance was deficient and (2) he was prejudiced by the deficiency. With regard to the second element, i.e., prejudice, the defendant must show that any error was so serious as to deprive him of a fair trial or other proceeding. To carry this burden, the defendant must show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

... Mr. Bishop ... faults Mr. Labat for filing a motion to continue his trial on December 1, 2003, less than three months shy of the deadline for the State to bring him to trial. This motion was relied upon by the Louisiana First Circuit Court of Appeal in upholding the trial court's denial of Mr. Bishop's motion to quash the bill of information filed against him.

The court will pretermit the issue of Mr. Labat's alleged deficient performance as trial counsel. Assuming solely for the purpose of argument that his performance was inadequate, the court finds that the defendant was not prejudiced as a result thereof. ...

... [T]he court does not find that Mr. Bishop was prejudiced by the alleged deficient performance of Mr. Labat in filing a motion to continue his trial on December 1, 2003, less than three months shy of the deadline for the State to bring him to trial. As pointed out by Mr. Bishop, this motion was relied upon by the Louisiana First Circuit Court of Appeal in upholding the trial court's denial of Mr. Bishop's motion to quash the bill of information filed against him. As pointed out by the Court of Appeal, at the time the motion to continue was filed by Mr. Labat on December 1, 2003, the State had until February 22, 2004, to commence the defendant's trial. No convincing evidence was presented to the confirm that Mr. Bishop's trial would not have commenced before February 22, 2004, if Mr. Labat had not filed the motion to continue on December 1, 2003. In fact, if the trial had not been continued on motion of Mr. Bishop's trial counsel, it is more probable than not that trial would have commenced before February 22, 2004. Quite simply, Mr. Bishop was not prejudiced by the filing of the motion.[17]

---

[17] Reasons for Judgment dated August 1, 2011, pp. 6-8; Rec. Doc. 3, pp. 158-60.

Regardless of whether petitioner's claim is evaluated by this Court under the stringently deferential standards of review imposed by the Antiterrorism and Effective Death Penalty Act of 1996 or *de novo*,[18] the result is the same: this claim clearly has no merit.

In the instant case, petitioner has failed to show that counsel performed deficiently by requesting a continuance. Obviously, there are innumerable reasons that an attorney might want to delay a trial. As a result, a decision on whether or not to seek a continuance normally is

---

[18] The Antiterrorism and Effective Death Penalty Act of 1996 comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

It is unclear, however, whether the AEDPA's standards of review apply where, as here, a state district court has ruled on the claim but the claim has not yet been fully exhausted in the state courts. See Kiser v. Gonzales, Civ. Action No. 11-CV-1944, 2012 WL 6641899, at *6 (S.D. Cal. Oct. 12, 2012), adopted, 2012 WL 6642684 (S.D. Cal. Dec. 20, 2012). Nevertheless, this Court need not decide whether the AEDPA's standards apply, because the United States Supreme Court has expressly noted that "[c]ourts can ... deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a)." Berghuis v. Thompkins, 130 S.Ct. 2250, 2265 (2010).

considered to be one of trial strategy and, as such, is accorded great deference.  See, e.g., McVean v. United States, 88 Fed. App'x 847, 849 (6th Cir. 2004); Moore v. Casperson, 345 F.3d 474, 490 (7th Cir. 2003).   Indeed, the United States Supreme Court has expressly cautioned courts not to second-guess counsel's decisions on such matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  Although petitioner opines that there was in fact no strategic reason for the decision to request the continuance in this case, he has failed to offer any colorable proof in support of that conclusory allegation. Without such evidence, second-guessing of counsel's motivations and strategic decisions is particularly inappropriate.

Further, *even if* counsel's performance was deficient in this respect, the state court was clearly correct in finding that petitioner has not demonstrated prejudice as required by Strickland.  He has pointed to no evidence whatsoever on which this Court could conclude that the state was unprepared to go to trial (or would not have gone to trial) as scheduled[19] or that the result in the case would have been different in any way if the trial been held on that earlier date. Accordingly, he has not met his burden to prove that there is a reasonable probability that, but for counsel's allegedly deficient performance in requesting a continuance, the result of the proceeding would have been different.

---

[19] Instead, petitioner simply argues that the state requested continuances on *subsequent* occasions. However, even if that is true, it does not prove that the state was unwilling, unprepared, or would have declined to bring petitioner to trial on the date set if required to do so in order to comply with the limitations period.

For all of these reasons, petitioner's ineffective assistance of counsel claim should be rejected.

The Court notes that petitioner also complains in his federal application that the state courts have refused to provide with him a return date for lodging his writ with the Louisiana First Circuit Court of Appeal or with a copy of the evidentiary hearing transcript for his use in the state post-conviction proceedings. Even if that is true and even if petitioner is using that refusal as the basis of a separate claim in this proceeding, such a refusal does not warrant federal *habeas corpus* relief. See McGee v. Cain, Civ. Action No. 11-2768, 2012 WL 1135853, at *9-10 (E.D. La. Mar. 13, 2012) (rejecting petitioner's claim that he was denied "meaningful judicial review" by the state court's refusal to provide transcripts for his use in post-conviction proceedings), adopted, 2012 WL 1135848 (E.D. La. Apr. 4, 2012). Federal *habeas corpus* relief simply cannot be granted to remedy errors which occur in state post-conviction proceedings. As the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. See, e.g., Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted). *Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.*

Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999) (emphasis added); see also Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL

3564827, at *23 (E.D. La. Oct. 29, 2009); Baham v. Allen Correctional Center, Civ. Action No. 07-4075, 2009 WL 3148757, at *3 (E.D. La. Sept. 30, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008).  Although application of this rule often proves harsh, the Fifth Circuit has emphatically held that it must nevertheless be followed, stating:

> We, as a federal appeals court entertaining a federal habeas corpus application, are without jurisdiction to review the constitutionality of [the petitioner's] state postconviction proceedings. Indeed, we are barred from doing so by our "no state habeas infirmities" rule. ... [O]ur hands are tied by the AEDPA, preventing our review of [the petitioner's] attack on his Louisiana postconviction proceedings, so we dutifully dismiss his claim.

Kinsel v. Cain, 647 F.3d 265, 273-74 (5th Cir.) (footnote omitted), cert. denied, 132 S.Ct. 854 (2011).  This Court's hands are likewise tied with respect to this claim, and therefore the claim should be denied.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Michael G. Bishop** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventh day of February, 2013.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**